FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

99 SEP 30 AM 8: 51

U.S. DISTRICT COURT
N.D. OF ALABAMA

RODNEY E. WOODY,       }

    Plaintiff,       }

v.       }      **CASE NO. CV 97-B-1291-S**

TOGO D. WEST, JR., SECRETARY }
OF THE ARMY; NATIONAL }
GUARD BUREAU, and THE }
ADJUTANT GENERAL FOR THE }
STATE OF ALABAMA, and JAIRUS }
D. HOLT, individually and officially, }

    Defendants.       }

**ENTERED**

SEP 3 0 1999

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by defendant Togo D. West, in his official capacity as Secretary of the Army ("the Army"), and the Motion to Dismiss filed by defendants Adjutant General for the State of Alabama ("the State") and Jairus D. Holt ("Holt"). In asserting their motion under Federal Rule of Civil Procedure 12(b)(6), defendants Holt and the State attach evidence constituting "matters outside the pleading" for purposes of Rule 12(b)(6), converting the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court finds that both motions are due to be granted.

27

## I. FACTUAL SUMMARY[1]

### A.    Plaintiff's Employment Status

Plaintiff Rodney E. Woody ("plaintiff" or "Woody") is an employee of the Alabama National Guard.  He was hired on November 15, 1974, as a part-time automotive helper in Fort McClellan, Alabama. (Am. Compl. ¶ 13.)  In 1984, plaintiff was assigned to Organizational Maintenance Shop No. 11 in Birmingham as an Automotive Worker. (Am. Compl. ¶ 15; Declaration of Colonel Melvin L. Morrow Jr. ("Morrow Decl.") ¶ 4.)  Since October 5, 1986, Woody has held the civilian duty title and grade of Automotive Worker, Wage Grade 09. (Morrow Decl. ¶ 4.)  He works in this position on the weekdays.  (Id.)

When a civilian is employed as a technician in the National Guard, s/he is required by federal law to (1) be a member of the National Guard; (2) hold the appropriate military grade for his/her position; and (3) "wear the uniform appropriate for the member's grade and component of the armed forces while performing duties as a technician." 32 U.S.C. § 709(b).  Consequently, plaintiff is also a member of the Alabama National Guard. (Morrow Decl. ¶ 4.)  He serves in this military capacity one weekend per month and two weeks per year.  (Id.)

Since December 12, 1989, plaintiff has held the rank of Staff Sergeant. (Id. at ¶ 5.)  Until October 1, 1996, he was assigned to the 650th Medical Detachment in the 31st Area Support Group of the 167th Support Command. (Id. ¶ 5.)  In his military capacity, Woody has been in the career management field of 63B, Lightweight Vehicle Repairman, with an assigned skill level of 30, together referred to as 63B30. (Id. ¶ 6.)

---

[1]The only facts offered in these motions are from defendant Togo D. West, Secretary of the Army ("the Army"), in support of its Motion for Summary Judgment. Thus, the court has constructed this summary based on the pleadings, evidentiary submissions, and other relevant submissions of the parties.

2

In both his military and civilian technician capacities, Woody was subject to the military control, command, and discipline of Major General Fred H. Casey and Colonel Melvin L. Morrow, Jr. (*Id.* at ¶ 2.)

**B.      *Woody I***

On May 14, 1990, plaintiff filed an EEO discrimination complaint with the National Guard alleging that he received a low appraisal; was denied use of shop facilities; had abusive language directed at him; and was the victim of disparate treatment because of his race. (Mem. Op. Granting Summ. J. ("Mem. Op.") at 2, *Woody v. West*, CV 93-C-2629-S (N.D. Ala. Sept. 13, 1994) ("*Woody I*"), attached as Ex. B. to Defs.' Mem. in Supp. of Mot. to Dismiss.) The National Guard investigated the complaint, and, on October 27, 1993, issued a finding of discrimination and took corrective action. (*Id.* at 3; *see also* Ex. 3, attached to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)

On December 15, 1993, Woody filed a complaint in federal court (*Woody I*), alleging race discrimination as outlined in his May 14, 1990, EEO complaint. (*Id.*) As with the present action, Woody named the Army, the National Guard Bureau, and the Adjutant General of the Alabama National Guard as defendants. (*Id.* at 1.) Similarly, as with the present action, Woody alleged violations of Title VII, , 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

On September 13, 1994, The *Woody I* court issued a Final Judgment accompanied by a Memorandum Opinion Granting Summary Judgement. (*Id.*) The *Woody I* court held, *inter alia*, that Woody, as National Guard technician was as a federal civilian employee, and therefore his sole remedy was Title VII. (*Id.* at 5.) Consequently, the court dismissed the section 1981 and 1983 claims. (*Id.*) Further, the court held that as a federal civilian employee of the Army, Woody could only bring suit against the Army. (*Id.* at 5-6, citing 42 U.S.C. § 2000e-16 and 10

3

U.S.C. § 3-13(a)(1).)  Accordingly, all other defendants were dismissed from the case.  (*Id.* at 6.)
The court then dismissed the remaining Title VII claim based on plaintiff's failure to exhaust
administrative remedies.  (*Id.* at 7-8).

Woody appealed the decision, and on January 23, 1996, the Eleventh Circuit issued an
unpublished opinion ruling on the appeal.  (*Woody v. West*, No. 94-7026 (11th Cir. Jan. 23, 1996)
(unpublished), attached as Ex. C. to the Army's Evid. Sub. in Supp. of Mot. Summ. J.)  The
Eleventh Circuit specifically noted that although Woody appealed on several grounds, he did not
appeal the district court's findings that (1) Title VII provided his exclusive remedy, and (2) the
Army was the only proper defendant.  (*Id.* at 4 n.2.)  As to all issues raised on appeal, the
Eleventh Circuit affirmed the district court.  (*Id.* at 5-7.)

## C.  *Woody II*

On November 17, 1990, Woody informally complained to an EEO Counselor that
between August 15 and October 18, 1990, he was subjected to racially discriminatory and/or
retaliatory conduct in the workplace.  (Order entered April 20, 1994, in *Woody v. West*, CV 93-
H-2702-S (*"Woody II"*), attached as Ex. E to the Army's Evid. Sub. in Supp. of Mot. Summ. J.)
On January 3, 1991, plaintiff filed a formal charge with the National Guard Bureau regarding the
alleged discriminatory and/or retaliatory activity.  (Mem. of Decision, *Woody II* (N.D. Ala. June
23, 1994), attached as Ex. F to the Army's Evid. Sub. in Supp. of Mot. Summ. J.)[2]  The formal
charge listed six specific allegations of race discrimination and retaliation.  (*Id.* at 1.)  On
February 4, 1991, the agency informed plaintiff that it was investigating two allegations,

_____

[2]The Order entered April 20, 1994, in *Woody II* states that the formal EEO complaint
was filed December 17, 1990, not January 3, 1991.  The discrepancy in dates has no effect on
this opinion.

4

rejecting three allegations, and taking no action on any remaining allegations. (*Id.* at 1-2.) The plaintiff did not appeal the dismissed allegations. (*Id.* at 1-2.)

On December 23, 1993, Woody filed a complaint in federal court alleging discrimination in job assignment, responsibilities, job titles, test scores, appraisals, privileges and scheduling. (*Woody II* Compl. ¶ 9, attached as Ex. D. to the Army's Evid. Sub. in Supp. of Mot. Summ. J.) As in *Woody I* and this action, Woody named the Army, the National Guard Bureau, and the Adjutant General as defendants. (*Id.*) Similarly, as in *Woody I* and this action, plaintiff alleged violations of Title VII, 42 U.S. C. § 1981, and 42 U.S.C. § 1983. (*Id.* at ¶¶ 17-19.)

On April 5, 1994, the *Woody II* court, apparently aware of the ongoing *Woody I* litigation, issued a show cause order requiring the plaintiff to clarify the alleged discriminatory and/or retaliatory activity he was challenging. (April 20, 1994, Order.) In response, the plaintiff narrowed the focus of the *Woody II* complaint to "offending conduct . . . between August 15 and October 18, 1990," that was "racially motivated or in retaliation for earlier complaints by plaintiff." (*Id.*)

In the April 20, 1994, Order, the *Woody II* court dismissed the section 1981 and 1983 claims as stale,[3] and declined to exercise jurisdiction over a pendant state claim. (*Id.* at 1-2.) On the remaining count, the Title VII claim, the *Woody II* court held that "the only appropriate defendant . . . is Togo D. West, Jr., Secretary of the Army. . . . [and] [a]ll other named parties are DISMISSED." (*Id.* at 1) (caps in original.)

---

[3]Even though it dismissed the 1981 and 1983 claims for staleness, the *Woody II* court specifically noted that the section 1981 and 1983 claims "should be dismissed for a variety of reasons." (April 20, 1994, Order at 1.)

On May 20, 1994, the Army moved for summary judgment on the remaining claim.

(Mem. of Decision at 1.)  The court granted the motion, holding that the challenged conduct was

not like or related to the allegations contained in plaintiff's January 3, 1991, EEO complaint.  (*Id.*

at 2.)  Consequently, the court dismissed the remaining claim based on plaintiff's failure to

exhaust administrative remedies.  (*Id.* at 2-3.)

As in *Woody I*, plaintiff appealed the decision.  On May 2, 1995, the Eleventh Circuit

dismissed the appeal for want of prosecution.  (Entry of Dismissal, *Woody v. West*, No. 94-6786

(11th Cir. May 2, 1995), attached as Ex. G to the Army's Evid. Sub. in Supp. of Mot. Summ. J.)

## D.     Plaintiff's New Discrimination and Retaliation Claims

### 1.     *March 1993 allegations*

In his Amended Complaint, plaintiff claims that in March 1993, he filed a complaint

against defendants alleging disparate treatment as to discipline, performance evaluations, and

other terms and conditions of employment.  (Am. Compl. ¶ 17.)  Plaintiff further claims that the

National Guard determined that plaintiff was treated differently.  (*Id.* ¶ 18.)

### 2.     *1994 allegations*

On November 16, 1994, plaintiff filed a formal complaint of discrimination with the

National Guard Bureau.  (Ex. 1, Pl.'s Evid. Sub. in Response to Def.'s Mot. to Dismiss.)  In the

complaint, Woody alleged that (1) on April 11, 1994, he was discriminated against on the basis

of race when he was denied an interview for the position of Heavy Equipment Inspector

Supervisor; (2) on April 12, 1994, he was discriminated against on the basis of his race when

J.D. Holt gave him a performance evaluation; and (3) on April 12, 1994, he was discriminated

against on the basis of his race when a staffing specialist gave him a performance evaluation.

6

(*Id.*) The Amended Complaint in this action contains no factual allegations or counts regarding these events. (*Id.*)[4]

### 3.    *1996 discrimination, retaliation, and harassment allegations*

In early 1996, the National Guard decided that the 650th Medical Detachment, the unit to which plaintiff was assigned, would go to inactive status on or by October 1, 1996. (Morrow Decl. ¶ 7.) Because of the impending inactivation, plaintiff and every other military technician serving in the unit were required to find compatible military positions in other National Guard units. (*Id.*)

As noted, federal law requires that civilian technicians must also be members of the National Guard. 32 U.S.C. § 709(b). Therefore, if plaintiff and other technicians in the 650th Medical Detachment wished to continue serving as civilian employees, they were required to locate compatible military assignments. (Morrow Decl. ¶ 7.) To be compatible, the technician's military unit must be supported by the technician's maintenance shop. (*Id.* ¶ 14.)

At that time, plaintiff's military classification was as a skill level 30 Staff Sergeant. (*Id.* at ¶ 9.) In February of 1996, plaintiff learned that a Construction Equipment Repair Supervisor position was vacant. (*Id.*)[5] The position of Construction Equipment Repair Supervisor is considered a 62B40 specialty level military position, which has a skill level of 40. (*Id.*) On February 11, 1996, plaintiff applied for and was denied the position. (Am. Compl. ¶ 19.)

_____

[4]The aforementioned March 1993 complaint, referred to in ¶ 17 of the Amended Complaint, could not have addressed the 1994 events, as it would pre-date such events.

[5]Plaintiff's Amended Complaint and 1996 EEOC Charge refer to this as a Construction *Engineer Maintenance* Supervisor position. (Am. Compl. ¶¶ 19, 21; Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) Despite the difference in terminology, however, there is no dispute as to any material fact regarding the position.

On October 1, 1996, plaintiff was assigned to the C Battery, 2nd Battalion, 117th Field Artillery Regiment. (Morrow Decl. ¶ 14.) This unit is compatible for Woody because it is supported by Organizational Maintenance Shop No. 11. (*Id.*) In the new unit, Woody serves in the military capacity of Self Propelled Field Artillery System Mechanic, a 63D position. (*Id.*) Plaintiff contends he was denied upward mobility by being forced to accept this position. ( Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) On October 18, 1996, plaintiff applied for, and received, the designation 62B, Construction Equipment Repairman. (Morrow Decl. ¶ 10.) His skill level remained, however, at 30. (*Id.*)

In his complaint, plaintiff claims that on October 22, 1996, he reapplied for the position of Construction Equipment Repair Supervisor. (Am. Compl. ¶ 19.) Plaintiff claims that his application was rejected and the position was awarded to a white male. (*Id.* at ¶ 20.)

Plaintiff also complains that his supervisor, Jarius D. Holt, has (1) made numerous racial remarks directed toward plaintiff; (2) encouraged co-workers to write letters to get plaintiff dismissed; and (3) failed to protect plaintiff from physical harm. (*Id.* at ¶ 24.) Plaintiff further claims that another foreman, Hoyt W. Lewis, used the term "nigger" in plaintiff's presence. (*Id.* at ¶ 25.) Finally, plaintiff alleges that he was more severely disciplined than similarly-situated white employees. (*Id.* at ¶ 26.)

On October 23, 1996, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), charging discrimination based on race and retaliation as evidenced by the plaintiff's being denied promotion to the position of Construction Equipment Repair Supervisor. (Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) The Charge did not mention Holt, Lewis, racial harassment, or any discriminatory or retaliatory activity unrelated to promotions. (*Id.*)

8

On February 28, 1997, the EEOC issued a right-to-sue notice, stating that plaintiff's claim was dismissed because "Charging Party is a uniformed member of the National Guard." (Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)   On May 27, 1997, plaintiff filed the instant action, amending his complaint on July 23, 1997.

## II. DISCUSSION

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

9

**B.    Plaintiff's Status: Federal or State Employee?**

Plaintiff brings claims of discrimination and retaliation against defendants Adjutant General and Holt under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (Am Compl. ¶¶ 27, 28.)  Defendants Holt and the State move to dismiss all claims against them on the basis that, *inter alia*, the *Woody I* and *Woody II* courts have already found that the only proper defendant in a discrimination and civil rights action by Woody against these defendants is Togo West, in his official capacity as Secretary of the Army ("the Army").  (Defs.' Mem. in Supp. of Mot. to Dismiss at 8-9; Defs.' Reply Mem at 1.)  Plaintiff argues that Alabama National Guard officials and employees are also proper defendants, based on plaintiff's status as a hybrid state and federal employee.  (Pl.'s Mem. Law. in Resp. to Defs' Mot. to Dismiss at 3-13.)

Due to the unique dual-status conferred upon National Guard technicians by 32 U.S.C. § 709, this is a murky area of law riddled with judicial decisions that vary as to reason and result.  Due to principles of collateral estoppel (issue preclusion), however, this court need not re-litigate an issue already decided by two courts in this Judicial District.

The doctrine of collateral estoppel, or issue preclusion, bars relitigation of an issue of fact or law that has been litigated and decided in a prior suit.  *McKinnon v. Blue Cross and Blue Shield of Alabama*, 935 F. 2d 1187, 1191 (11th Cir. 1991).  In order for the doctrine to apply, (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.  *Id.*  The exercise of the doctrine is a matter "within the sound discretion of the trial court."  *In re Bush*, 62 F. 3d 1319, 1325 n.8 (11th Cir. 1995).

10

As in this case, in *Woody I* and *Woody II* the plaintiff named federal and state entities as defendants. (*See Woody I* and *Woody II* Compls, attached as Exs. A and D to the Army's Evid. Sub. in Supp. of Mot. Summ. J.) The *Woody I* court held that as a National Guard technician, Woody was a federal civilian employee of the Army and could only bring suit against the Army. (*Woody I* Mem. Op. at 6, attached as Ex. B. to Defs.' Mem. in Supp. of Mot. to Dismiss (citing 42 U.S.C. § 2000e-16 and 10 U.S.C. § 3-13(a)(1)).) Accordingly, all other defendants were dismissed from the case. (*Id.*) Further, the court held, *inter alia*, that as a federal civilian employee, Woody's sole remedy was Title VII. (*Id.* at 5.) Consequently, the court dismissed the section 1981 and 1983 claims. (*Id.*)

Woody appealed the decision, and on January 23, 1996, the Eleventh Circuit issued an unpublished opinion ruling on the appeal. (*Woody I* Unpublished Op., attached as Ex. C. to the Army's Evid. Sub. in Supp. of Mot. Summ. J.) The Eleventh Circuit specifically noted that, although Woody appealed on several grounds, he did not appeal the district court's findings that (1) Title VII provided his exclusive remedy, and (2) the Army was the only proper defendant. (*Id.* at 4 n.2.)

In an April 20, 1994, Order, the *Woody II* court dismissed all claims except the Title VII count. (*Woody II* Order entered April 20, 1994, attached as Ex. E to the Army's Evid. Sub. in Supp. of Mot. Summ. J.) On the remaining Title VII claim, the *Woody II* court held that "the only appropriate defendant . . . is Togo D. West, Jr., Secretary of the Army. . . . [and] [a]ll other named parties are DISMISSED." (*Id.* at 1) (caps in original.) Plaintiff appealed the *Woody II* decision, and on May 2, 1995, the Eleventh Circuit dismissed the appeal for want of prosecution. (*Woody II* Entry of Dismissal, attached as Ex. G to the Army's Evid. Sub. in Supp. of Mot. Summ. J.)

11

The issue of plaintiff's employment status, and the concomitant issue of the proper causes of action and defendants in an employment discrimination claim by plaintiff against the federal and state governments, are issues that are (1) identical to the issues in this litigation; (2) actually litigated in *Woody I* and *Woody II*; and (3) necessary and critical to the *Woody I* and *Woody II* judgments. Plaintiff's status a National Guard technician under 32 U.S.C. § 709 has not changed since the prior litigation. Further, plaintiff cites no controlling precedent issued after the prior litigation affecting his status as a state or federal employee.

As the facts and law have not changed since *Woody I* and *Woody II*, the plaintiff is estopped from raising these issues in the instant case. Based on the judgments rendered in *Woody I* and *Woody II*, the court finds that the only proper defendant in this case is Togo West, in his official capacity as Secretary of the Army ("the Army"). Further, based on the judgments rendered in *Woody I* and *Woody II*, the court finds that for the purposes of this litigation, Woody is a federal civilian employee and his only proper cause of action is under Title VII.[6] Thus, the court finds that defendants Adjutant General of the State of Alabama and Jairus D. Holt are due to be granted judgment as a matter of law on all claims relating to plaintiff's civilian employment.[7]

---

[6]This conclusion does not change the court's immunity analysis, sections II.C. and D., *infra*. The status of "federal civilian employee" conferred by 32 U.S.C § 709 is part and parcel of the analysis performed by this court and others when determining that National Guard technicians are members of the military.

[7]The court recognizes that the National Guard Bureau is also a named defendant in this action. The National Guard Bureau is an agency of the Secretary of the Army. 10 U.S.C. §10501. Consequently, it is not a proper defendant in a Title VII action. *Canino v. EEOC*, 707 F. 2d 468, 472 (11th Cir. 1983). This issue was also decided in the prior litigation. (*Woody I* Mem. Op. at 5-6.)

12

Even if the doctrine of collateral estoppel did not apply, the court would find, in the

alternative, that all claims against all defendants are due to be dismissed as nonjusticiable

military matters not reviewable by this court. In turning to the question of nonjusticiability of

military matters, however, the court must first address the threshold issue of plaintiff's military

status.

## C.    Plaintiff's Status: Civilian or Military Employee?

Based on overwhelming precedent, the court finds that a technician enlisted in the

National Guard under the auspices of 32 U.S.C. § 709 must be considered military for purposes

of discrimination and civil rights actions, even if the challenged conduct was related to his/her

civilian technician position. *NeSmith v. Fulton*, 615 F. 2d 196, 201 (5th Cir. 1980) ("NeSmith's

challenge to the decision to terminate him as a civilian technician thus involves an internal

military matter"); *see also Wright v. Park*, 5 F. 3d 586, 588 (1st Cir. 1993) ("it is unsurprising

that, no matter the context, every court having occasion closely to consider the capacity of

National Guard technicians has determined that capacity to be irreducibly military in nature")

(collecting cases).

## D.    Military Immunity: Was the Challenged Conduct Military in Nature?

### 1.    *The Mindes Two-Step*

Having determined that Woody is a member of the military, the court must determine if

the challenged conduct was also military in nature, rendering this matter nonjusticiable.[8]

---

[8]Because both the *Woody I* and *Woody II* courts dismissed the plaintiff's remaining
claims based on his failure to exhaust administrative remedies, they never addressed the issue of
military immunity. Thus, the matter was never actually litigated nor was it necessary and critical
to the *Woody I* and *Woody II* judgments. Therefore, defendants are not estopped from asserting
the immunity doctrine.

13

Defendants and plaintiff use both the two-step evaluation developed by the Fifth Circuit in *Mindes v. Seamon*, 453 F. 2d 197, 201 (5th Cir. 1971), and the "incident to military service" standard initially set forth in *Feres v. United States*, 340 U.S. 135 (1950) and further developed in *Chappell v. Wallace*, 462 U.S. 296 (1983). (Defs.' Mem. in Supp. of Mot. Dismiss at 4-5; Army's Mem. in Supp. of Mot. Summ. J. at 10-15; Pl.'s Mem. Law in Resp. to Mot. Dismiss at 6-9, 17-19.) This court is of the opinion that it need not apply both tests.

In *Feres*, the Supreme Court held that the government was not liable under the Federal Tort Claims Act for injuries to servicemen "where the injuries arise out of or are in the course activity incident to service." *Feres*, 340 U.S. at 146.

Twenty-one years later, in *Mindes*, the Fifth Circuit considered an action brought by an Air Force Captain seeking declaratory and injunctive relief from an adverse personnel report. *Mindes*, 453 F. 2d at 198. Instead of using the *Feres* standard, the *Mindes* court established a two-step evaluation (a threshold test followed by four-factor balancing) to determine if a court should review internal military affairs. *Id.* at 201-02.

Thereafter, in *Chappell*, the Supreme Court addressed a *Bivens*-type action by five Navy enlisted men seeking damage and injunctive relief for alleged race discrimination in violation of their constitutional rights. *Chappell*, 462 U.S. at 297. Relying partially on *Feres*, the Court bluntly and broadly held that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305.

After *Chappell*, the Eleventh Circuit considered an action by a discharged member of the Alabama National Guard alleging, as in this case, discrimination based on his race in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. *Stinson v. Hornsby*, 821 F. 2d 1537, 1539 (11th Cir. 1987). Rather than read *Chappell* as foreclosing any action, the *Stinson* court held,

14

*inter alia*, that as to the section 1981 and 1983 claims, the case should be remanded for further analysis under the *Mindes* two-step evaluation. *Id.* at 1540-41. The court specifically stated that, "We find the approach adopted in *Mindes* binding in this action." *Id.* at 1540 (italics added).

Almost simultaneously, the Supreme Court handed down a decision in yet another *Bivens*-type action by a member of the military. *United States v. Stanley*, 483 U.S. 669 (1987).[9] In *Stanley*, the Court considered the case of an Army Master Sergeant who alleged violations of his constitutional rights in that he was secretly administered lysergic acid diethylamide (LSD) pursuant to an Army study. *Id.* at 671. The Court held that *Chappell* did not rule out all actions by enlisted men against the government; rather, the proper test for *Bivens*-type actions was whether the injuries "arise out of or are in the course of activity incident to service." *Id.* at 684 (quoting *Feres*, 340 U.S. at 146).

Since *Stanley*, other Circuits addressing discrimination, civil rights claims and other constitutional claims by members of the military, including the National Guard, have held that the *Stanley/Chappel/Feres* standard is the proper rule in determining justiciability of such claims in the military context, abrogating the *Mindes* approach. *Wright*, 5 F. 3d at 590, n.6; *Maddick v. United States*, 978 F. 2d 614, 615 (10th Cir. 1992); *Watson v. Arkansas National Guard*, 886 F. 2d 1004, 1006-07, 1009-10 (8th Cir. 1989). Moreover, the progenitor of the *Mindes* two-step, the Fifth Circuit, has abandoned that approach, as well. *Crawford v. Texas Army Nat'l Guard*, 794 F. 2d 1034, 1036 (5th Cir. 1986). Finally, the Eleventh Circuit, albeit in *dicta*, has explicitly recognized the applicability of the *Stanley* standard in *Bivens*-type actions. *Kitowski v. United States*, 931 F. 2d 1526, 1529 (11th Cir. 1991).

_____

[9]The *Stanley* decision actually pre-dated *Stinson* by one month, but the Eleventh Circuit did not mention it in its opinion.

Thus, this court finds that the standard set forth in *Feres* and its progeny is the correct rule to apply when determining whether an activity in the uniformed services is military in nature, rendering it nonjusticiable. *See Neal v. Alabama Nat'l Guard*, 1997 WL 114910, \*2 - \*4 (M.D. Ala. March 13, 1997) (reaching the same conclusion).

### 2. *Application of the Stanley Standard*

In *Kitowski*, the Eleventh Circuit set forth three factors to examine when determining if the injuries arise out of or are in the course of activity incident to military service: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the serviceman was engaged in at the time of the injury. *Kitowski*, 931 F. 2d at 1528-29. Thus, the court must apply these factors to the challenged conduct to determine the justiciability of the claims.[10]

### a. The 1996 promotion claims

Sometime in early 1996, the National Guard decided that the 650th Medical Detachment, the unit to which plaintiff was assigned, would go to inactive status on or by October 1, 1996. (Morrow Decl. ¶ 7.) Because of the impending inactivation, plaintiff and every other military

---

[10]As a preliminary matter, the court must dispense with certain allegations contained in the Amended Complaint and evidentiary record. Plaintiff claims that in March 1993, he filed a complaint against defendants alleging disparate treatment as to discipline, performance evaluations, and other terms and conditions of employment. (Am. Compl. ¶ 17.) Plaintiff further claims that the National Guard determined that plaintiff was treated differently. (*Id.* ¶ 18.) The court finds that these claims were clearly encompassed in *Woody I* and are barred by the doctrine of *res judicata* (claim preclusion).

In his evidentiary submission, plaintiff submits a formal complaint of discrimination filed with the National Guard Bureau on November 16, 1994. (Ex. 1, Pl.'s Evid. Sub. in Response to Def.'s Mot. to Dismiss.) In this 1994 complaint, Woody alleges discrimination as to promotion and performance evaluations. (*Id.*) The court finds these allegations are either outside the scope of the Amended Complaint, or, in the alternative, barred by the applicable statute of limitations.

16

technician serving in the unit were required to find compatible military positions in other National Guard units. (*Id.*)

As noted, federal law requires that civilian technicians must also be members of the National Guard. 32 U.S.C. § 709(b). Therefore, if plaintiff and other technicians in the 650th Medical Detachment wished to continue serving as civilian employees, they needed to find compatible military assignments. (Morrow Decl. ¶ 7.) To be compatible, a National Guard member's military unit must be supported by the technician's maintenance shop. (*Id.* ¶ 14.)

At that time, plaintiff's military classification was as a skill level 30 Staff Sergeant. (*Id.* at ¶ 9.) In February of 1996, plaintiff learned that a Construction Equipment Repair Supervisor position was vacant. (*Id* at ¶ 8.)[11] The position of Construction Equipment Repair Supervisor is considered a 62B40 specialty level military position, which has a skill level of 40. (*Id* at ¶¶ 8-9.) On February 11, 1996, Woody applied for and was denied the position. (Am. Compl. ¶ 19.)

On October 1, 1996, plaintiff was assigned to the C Battery, 2nd Battalion, 117th Field Artillery Regiment. (Morrow Decl. ¶ 14.) This unit is compatible for Woody because it is supported by Organizational Maintenance Shop No. 11. (*Id.*) In the new unit, Woody serves in the military capacity of Self Propelled Field Artillery System Mechanic, a 63D position. (*Id.*) Plaintiff contends he was denied upward mobility by being forced to accept this position. ( Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)

---

[11]Plaintiff's Amended Complaint and 1996 EEOC Charge refer to this as a Construction *Engineer Maintenance* Supervisor position. (Am. Compl. ¶¶ 19, 21; Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) Despite the difference in terminology, however, there is no dispute as to any material fact regarding the position.

In his complaint, plaintiff claims that on October 22, 1996, he reapplied for the position of Construction Equipment Repair Supervisor. (Am. Compl. ¶ 19.) Plaintiff claims that his application was rejected and the position was awarded to a white male. (*Id.* at ¶ 20.)

In order for plaintiff to move from the 63B to the 62B career management field, plaintiff would need additional schooling or the rank of Master Sergeant. (Morrow Decl. ¶ 9.) Master Sergeant ranks two grade levels above that of Staff Sergeant. (*Id.*) To become eligible for the position, plaintiff would had to have completed a four-step promotion process. (*Id.* at ¶ 11.) This process was never implemented because the position was filled through a lateral transfer. (*Id.* at ¶12-13.)

Turning to the three factors set forth in *Kitowski*, it is clear from this record that any injury arising out of the denial of the Construction Equipment Repair Supervisor position occurred (1) when plaintiff was on duty, (2) at military facilities, (3) while the plaintiff was seeking a military promotion. The activity is clearly incident to plaintiff's military service, and thus nonjusticiable and not reviewable by this court. *Wright*, 5 F. 3d at 591 (holding that employment action taken against National Guard technician was an injury suffered in his military capacity, arising incident to his military service, and thus "fail[ing] the test of judiciability").

Therefore, summary judgment is due to be granted to all defendants on all plaintiff's claims relating to the denial of the Construction Equipment Repair Supervisor position. *Id.* (holding that if the injury arises from activity incident to military service, both *Bivens*-type actions and civil rights claims against state officials are nonjusticiable).

### b.    Harassment and other claims

Plaintiff also complains that his supervisor, Jarius D. Holt, has (1) made numerous racial remarks directed toward plaintiff; (2) encouraged co-workers to write letters to get plaintiff

dismissed; and (3) failed to protect plaintiff from physical harm.  (*Id.* at ¶ 24.)  Plaintiff further

claims that another foreman, Hoyt W. Lewis, used the term "nigger" in plaintiff's presence.  (*Id.*

at ¶ 25.)  Finally, plaintiff alleges that he is more severely disciplined than similarly situated

white employees.  (*Id.* at ¶ 26.)

Plaintiff contends that because these actions occurred in the maintenance shop, he was

not on active duty and not a member of the military.  (Pl.'s Mem. in Resp. to Defs.' Mot.

Dismiss at 17-18.)  Further, plaintiff argues that at the maintenance shop he was not subject to

military control, thus the harassing activity was not incident to military service.  (*Id.* at 18-19.)

The court finds these arguments unpersuasive.

The position of National Guard technician has been well litigated.  Courts recognize that

"while a technician's job is a composite, containing both civilian and military pieces, the job's

dual aspects are inseparable; they are, like Chang and Eng, joined at the chest."  *Walker*, 5 F. 3d

at 586.  Consequently, the civilian and military positions cannot be divided for purposes of

liability or immunity.  *Id.*  Any action affecting the civilian status "necessarily implicates" the

military status.  *Id.; see also NeSmith v. Fulton*, 615 F. 2d 196, 201 (5th Cir. 1980) ("NeSmith's

challenge to the decision to terminate him <u>as a civilian technician</u> thus involves an internal

military matter") (emphasis added).

The Ninth Circuit, addressing a state tort claim based on the harassment of a technician in

a maintenance shop, undertook a detailed analysis of the National Guard's civilian technician

position.  *Stauber v. Cline*, 837 F. 2d 395, 400 (9th Cir. 1987).  In *Stauber*, the technicians were

under the direct command of active-duty military officers, shared the same direct military

relationships whether on military or civilian status, and were subject to military discipline.  *Id.*

Consequently, the court concluded that "[n]otwithstanding [a technician's] dual employment status, we agree that [plaintiff's claim of harassment] arose incident to service." *Id.* at 401.

In this case, Woody holds the same technician position as the *Stauber* plaintiff, subject to the same type of military control, command, and discipline. (Morrow Decl. ¶ 2 and n. 3.) Regardless of civilian or military status, the plaintiff, while working in the maintenance shop, was on-duty, in military facilities, undertaking military activities. The challenged activity is clearly incident to plaintiff's military service, and thus nonjusticiable and not reviewable by this court.

Therefore, summary judgment is due to be granted to all defendants on all plaintiff's claims relating to harassment or disciplinary activity in the maintenance shop.

**E.    Exhaustion of Administrative Remedies**

To the extent plaintiff could convince this court that he had a viable Title VII claim against the federal government based on the civilian nature of his job, plaintiff has failed to exhaust the administrative remedies, a condition precedent to bringing such claims. Plaintiff asserts that he exhausted all the remedies available to him through the National Guard in pursuit of his discrimination claim. (Pl.'s Mem. in Resp. to Defs.' Mot. Dismiss at 13-16.) Plaintiff states that he filed an EEO complaint with the National Guard Bureau in 1994 and has yet to receive a response. (*Id.*) Thus, he claims that the only available avenue for redress is the one he is currently taking, filing an EEOC claim on October 23, 1996, receiving notice to sue, and filing this complaint in federal court. (*Id.*; Pl.'s Am. Comp. ¶¶ 9-11.) Plaintiff claims that any and all other remedies would be futile or inadequate. (Pl.'s Mem. in Resp. to Defs.' Mot. Dismiss at 13-16.)

20

The defendant Army argues that plaintiff was required to follow the guidelines set for federal employees in alleging claims of discrimination. This court agrees. Exhaustion of administrative remedies is a prerequisite for federal employees filing discrimination claims. *Brown v. General Services Administration*, 425 U.S. 820, 834-35 (1976). Woody's status as a federal employee has already been established. 32 U.S.C. § 709. Thus, he must follow the procedures set forth in 29 C.F.R. § 1614 before pursuing such claims in federal court.

The Acting Director of the Army Board for Correction of Military Records ("ABCMR") testified that plaintiff has not filed an application for relief with respect to the allegations in this complaint. (Decl. Karl Schneider ¶ 4.) The Acting Director further stated that plaintiff could file this application at any time, subject to the three-year statute of limitations. (*Id.*) Plaintiff has not done so.

Plaintiff's claims of futility are unpersuasive. The Army has investigated and taken corrective action when plaintiff previously made claims of discrimination. (*Woody I* Mem. Op.) Additionally, plaintiff's claim that the 1994 EEO complaint filed with the National Guard Bureau is evidence of futility or administrative exhaustion is unpersuasive. Plaintiff could have brought charges based on the 1994 promotion and performance evaluations, but did not mention them in his Amended Complaint. Those challenged activities are outside the scope of this claim.

Therefore, the court finds that any remaining claims against the federal government are due to be dismissed because of plaintiff's failure to exhaust his administrative remedies.

21

## III. CONCLUSION

Based upon the foregoing analysis, the court finds that both the Motion for Summary

Judgment and the Motion to Dismiss are due to be granted. An Order consistent with this

opinion will be entered contemporaneously with this opinion.

**DONE** this 30th day of September, 1999.

**SHARON LOVELACE BLACKBURN**
United States District Judge

22