UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

SEP 29 PM 3:22

U.S. DISTRICT COURT
N.D. OF ALABAMA

RODNEY E. WOODY,        }
        }
    Plaintiff,       }
        }
v.        }    CASE NO. CV 97-B-1291-S
        }
TOGO D. WEST, JR., SECRETARY  }
OF THE ARMY; NATIONAL GUARD  }
BUREAU, and THE ADJUTANT  }
GENERAL FOR THE STATE OF  }
ALABAMA, and JAIRUS D. HOLT,  }
individually and officially,    }
        }
    Defendants.     }

**ENTERED**

OCT - 2 2000

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by defendant Togo

D. West, in his official capacity as Secretary of the Army ("the Army"), and the Motion to

Dismiss filed by defendants Adjutant General for the State of Alabama ("the State") and Jairus

D. Holt ("Holt").  In asserting their motion under Federal Rule of Civil Procedure 12(b)(6),

defendants Holt and the State attach evidence constituting "matters outside the pleading" for

purposes of Rule 12(b)(6), converting the motion to one for summary judgment under Rule 56.

Fed. R. Civ. P. 12(b).

The court has previously considered and granted these motions.  Thereafter, plaintiff

timely filed a Motion To Alter, Amend Or Vacate.  Having considered the record, the

submissions of the parties, and the relevant law, the court finds that the motion is due to be

granted.  Having considered the newly discovered regulations submitted by plaintiff, the court is

of the opinion that defendants' Motion to Dismiss and Motion for Summary Judgment are still

due to be granted.  The newly submitted regulations, however, have caused the court to change its reasoning and issue this revised Memorandum Opinion.

## I. FACTUAL SUMMARY[1]

### A.    Plaintiff's Employment Status

Plaintiff Rodney E. Woody ("plaintiff" or "Woody") is a military technician employed by the Alabama National Guard.  (Declaration of Colonel Melvin L. Morrow Jr. ("Morrow Decl.") ¶ 4.)  He was hired on November 15, 1974, as a part-time automotive helper in Fort McClellan, Alabama.  (Am. Compl. ¶ 13.)  In 1984, plaintiff was assigned to Organizational Maintenance Shop No. 11 in Birmingham as an Automotive Worker.  (Am. Compl. ¶ 15; Morrow Decl. ¶ 4.)  Since October 5, 1986, Woody has held the civilian duty title and grade of Automotive Worker, Wage Grade 09.  (Morrow Decl. ¶ 4.)  He works in this position during the week.  (*Id.*)

As a technician in the National Guard, plaintiff is required by federal law to (1) be a member of the National Guard; (2) hold the appropriate military grade for his position; and (3) "wear the uniform appropriate for the member's grade and component of the armed forces while performing duties as a technician." 32 U.S.C. § 709(b).  Since December 12, 1989, plaintiff has held the rank of Staff Sergeant in the Alabama National Guard.  (Morrow Decl. ¶ 5.)  Until October 1, 1996, he was assigned to the 650th Medical Detachment in the 31st Area Support Group of the 167th Support Command.  (*Id.* ¶ 5.)  In his military capacity, plaintiff has been in

---

[1]  The only facts offered in these motions are from defendant Togo D. West, Secretary of the Army ("the Army"), in support of its Motion for Summary Judgment.  Thus, the court has constructed this summary based on the pleadings, evidentiary submissions, and other relevant submissions of the parties.

the career management field of 63B, Lightweight Vehicle Repairman, with an assigned skill level of 30, together referred to as 63B30. (*Id.* ¶ 6.)

In both his military and civilian technician capacities, plaintiff was subject to the military control, command, and discipline of Major General Fred H. Casey ("Casey") and Colonel Melvin L. Morrow, Jr. ("Morrow"). (*Id.* at ¶ 2.)

**B.**   ***Woody I***

On May 14, 1990, plaintiff filed an EEO discrimination complaint with the National Guard alleging that he received a low appraisal; was denied use of shop facilities; had abusive language directed at him; and was the victim of disparate treatment because of his race. (Mem. Op. Granting Summ. J. ("Mem. Op.") at 2, *Woody v. West*, CV 93-C-2629-S (N.D. Ala. Sept. 13, 1994) ("*Woody I*"), attached as Ex. B. to Defs.' Mem. in Supp. of Mot. to Dismiss.) Although it is not entirely clear from the evidentiary record, it appears as though the allegations related to plaintiff's technician position. (*Id.* at 2-3.) The National Guard investigated the complaint, and, on October 27, 1993, issued a finding of discrimination and took corrective action. (*Id.* at 3; *see also* Ex. 3, attached to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)

On December 15, 1993, Woody filed a complaint in federal court (*Woody I*), alleging race discrimination as outlined in his May 14, 1990, EEO complaint. (*Woody I* Mem. Op.) As with the present action, Woody named the Army, the National Guard Bureau, and the Adjutant General of the Alabama National Guard as defendants. (*Id.* at 1.) Similarly, as with the present action, Woody alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("section 1981"), and 42 U.S.C. § 1983 ("section 1983").

On September 13, 1994, The *Woody I* court issued a Final Judgment accompanied by a Memorandum Opinion Granting Summary Judgment. (*Id.*) The *Woody I* court held, *inter alia*,

3

that plaintiff, as a National Guard technician was a federal civilian employee, and therefore his

sole remedy was pursuant to Title VII. (*Id.* at 5.) Consequently, the court dismissed the section

1981 and section 1983 claims. (*Id.*) Further, the court held that as a federal civilian employee of

the Army, Woody could only bring suit against the Army. (*Id.* at 5-6, citing 42 U.S.C. § 2000e-

16 and 10 U.S.C. § 3-13(a)(1).) Accordingly, all other defendants were dismissed from the case.

(*Id.* at 6.) The court then dismissed the remaining Title VII claim based on plaintiff's failure to

exhaust administrative remedies. (*Id.* at 7-8.)

Woody appealed the decision, and on January 23, 1996, the Eleventh Circuit issued an

unpublished opinion ruling on the appeal. (*Woody v. West*, No. 94-7026 (11th Cir. Jan. 23,

1996) (unpublished), attached as Ex. C. to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)

The Eleventh Circuit specifically noted that although Woody appealed on several grounds, he

did not appeal the district court's findings that (1) Title VII provided his exclusive remedy, and

(2) the Army was the only proper defendant. (*Id.* at 4 n.2.) As to all issues raised on appeal, the

Eleventh Circuit affirmed the district court. (*Id.* at 5-7.)

## C.     *Woody II*

On November 17, 1990, Woody informally complained to an EEO Counselor that

between August 15 and October 18, 1990, he was subjected to racially discriminatory and/or

retaliatory conduct in the workplace. (Order entered April 20, 1994, in *Woody v. West*, CV 93-

H-2702-S (*"Woody II"*), attached as Ex. E to the Army's Evid. Sub. in Supp. of Mot. for Summ.

J.) On January 3, 1991, plaintiff filed a formal charge with the National Guard Bureau regarding

the alleged discriminatory and/or retaliatory activity. (Mem. of Decision, *Woody II* (N.D. Ala.

June 23, 1994), attached as Ex. F to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)[2] The formal charge listed six specific allegations of race discrimination and retaliation. (*Id.* at 1.) On February 4, 1991, the agency informed plaintiff that it was investigating two allegations, rejecting three allegations, and taking no action on any remaining allegations. (*Id.* at 1-2.) The plaintiff did not appeal the dismissed allegations. (*Id.* at 1-2.)

On December 23, 1993, Woody filed a complaint in federal court alleging discrimination in job assignment, responsibilities, job titles, test scores, appraisals, privileges and scheduling. (*Woody II* Compl. ¶ 9, attached as Ex. D. to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.) It is unclear from the evidentiary record whether the allegations pertained to plaintiff's civilian or military position. (*See id.*; Mem. of Decision at 1-2.) As in *Woody I* and this action, Woody named the Army, the National Guard Bureau, and the Adjutant General as defendants. (*Woody II* Compl.) Similarly, as in *Woody I* and this action, plaintiff alleged violations of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (*Id.* at ¶¶ 17-19.)

On April 5, 1994, the *Woody II* court, apparently aware of the ongoing *Woody I* litigation, issued a show cause order requiring plaintiff to clarify the alleged discriminatory and/or retaliatory activity he was challenging. (April 20, 1994, Order.) In response, plaintiff narrowed the focus of the *Woody II* complaint to "offending conduct . . . between August 15 and October 18, 1990," that was "racially motivated or in retaliation for earlier complaints by plaintiff." (*Id.*)

---

[2] The Order entered April 20, 1994, in *Woody II* states that the formal EEO complaint was filed December 17, 1990, not January 3, 1991. The discrepancy in dates has no effect on this opinion.

In the April 20, 1994, Order, the *Woody II* court dismissed the section 1981 and section 1983 claims as stale, and declined to exercise jurisdiction over a pendant state claim. (*Id.* at 1-2.) On the remaining count, the Title VII claim, the *Woody II* court held that "the only appropriate defendant . . . is Togo D. West, Jr., Secretary of the Army. . . . [and] [a]ll other named parties are DISMISSED." (*Id.* at 1) (caps in original.)

On May 20, 1994, the Army moved for summary judgment on the remaining Title VII claim. (Mem. of Decision at 1.) The court granted the motion, holding that the challenged conduct was not like or related to the allegations contained in plaintiff's January 3, 1991, EEO complaint. (*Id.* at 2.) Consequently, the court dismissed the remaining claim based on plaintiff's failure to exhaust administrative remedies. (*Id.* at 2-3.)

As in *Woody I*, plaintiff appealed the decision. On May 2, 1995, the Eleventh Circuit dismissed the appeal for want of prosecution. (Entry of Dismissal, *Woody v. West*, No. 94-6786 (11th Cir. May 2, 1995), attached as Ex. G to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)

## D. Plaintiff's Discrimination and Retaliation Claims In this Case

### 1. *March 1993 allegations*

In his Amended Complaint, plaintiff claims that in March 1993, he filed a complaint with the National Guard against defendants alleging disparate treatment as to discipline, performance evaluations, and other terms and conditions of employment. (Am. Compl. ¶ 17.) Plaintiff further claims that the National Guard determined that plaintiff was treated differently. (*Id.* ¶ 18.)

**2.    *1994 allegations***

On November 16, 1994, plaintiff filed a formal complaint of discrimination with the

National Guard Bureau. (Ex. 1, Pl.'s Evid. Sub. in Response to Def.'s Mot. to Dismiss.)  In the

complaint, Woody alleged that (1) on April 11, 1994, he was discriminated against on the basis

of race when he was denied an interview for the position of Heavy Equipment Inspector

Supervisor; (2) on April 12, 1994, he was discriminated against on the basis of his race when

J.D. Holt gave him a performance evaluation; and (3) on April 12, 1994, he was discriminated

against on the basis of his race when a staffing specialist gave him a performance evaluation.

(*Id.*)  The Amended Complaint in this action contains no factual allegations or counts regarding

these events.  (*Id.*)[3]

**3.    *1996 discrimination, retaliation, and harassment allegations***

In early 1996, the National Guard decided that the 650th Medical Detachment, the unit to

which plaintiff was assigned, would go to inactive status on or by October 1, 1996. (Morrow

Decl. ¶ 7.)  Because of the impending inactivation, plaintiff and all other military technicians

serving in the unit were required to find compatible military positions in other National Guard

units.  (*Id.*)

As noted, federal law requires that technicians must also be members of the National

Guard.  32 U.S.C. § 709(b).  Therefore, if plaintiff and other technicians in the 650th Medical

Detachment wished to continue serving as technicians, they were required to locate compatible

---

[3]  The aforementioned March 1993 administrative complaint, referred to in ¶ 17 of the
Amended Complaint, could not have addressed the 1994 events, as it would pre-date such
events.

military assignments. (Morrow Decl. ¶ 7.) To be compatible, the technician's military unit must be supported by the technician's maintenance shop. (*Id.* ¶ 14.)

At that time, plaintiff's military classification was as a skill level 30 Staff Sergeant. (*Id.* at ¶ 9.) In February of 1996, plaintiff learned that a Construction Equipment Repair Supervisor position was vacant. (*Id.*)[4] The position of Construction Equipment Repair Supervisor is considered a 62B40 specialty level military position, which has a skill level of 40. (*Id.*) On February 11, 1996, plaintiff applied and was rejected for the position. (Am. Compl. ¶ 19.)

On October 1, 1996, plaintiff was assigned to the C Battery, 2nd Battalion, 117th Field Artillery Regiment. (Morrow Decl. ¶ 14.) This unit is compatible for plaintiff because it is supported by Organizational Maintenance Shop No. 11. (*Id.*) In the new unit, plaintiff serves in the military capacity of Self Propelled Field Artillery System Mechanic, a 63D position. (*Id.*) Plaintiff contends that he was denied upward mobility by being forced to accept this position. (Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) On October 18, 1996, plaintiff applied for and received the designation 62B, Construction Equipment Repairman. (Morrow Decl. ¶ 10.) His skill level remained, however, at 30. (*Id.*)

In his complaint, plaintiff claims that on October 22, 1996, he reapplied for the position of Construction Equipment Repair Supervisor. (Am. Compl. ¶ 19.) Plaintiff claims that his application was rejected and the position was awarded to a white male. (*Id.* at ¶ 20.)

Plaintiff also complains that his supervisor, Holt, has (1) made numerous racial remarks directed toward plaintiff; (2) encouraged co-workers to write letters to get plaintiff dismissed;

---

[4] Plaintiff's Amended Complaint and 1996 EEOC Charge refer to this as a Construction Engineer Maintenance Supervisor position. (Am. Compl. ¶¶ 19, 21; Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) Despite the difference in terminology, however, there is no dispute as to any material fact regarding the position.

and (3) failed to protect plaintiff from physical harm.  (*Id.* at ¶ 24.)  Plaintiff further claims that

another foreman, Hoyt W. Lewis ("Lewis"), used the term "nigger" in plaintiff's presence.  (*Id.*

at ¶ 25.)  Finally, plaintiff alleges that he was more severely disciplined than similarly-situated

white employees.  (*Id.* at ¶ 26.)

On October 23, 1996, plaintiff filed a charge with the Equal Employment Opportunity

Commission ("EEOC"), charging discrimination based on race and retaliation as evidenced by

the plaintiff's being denied promotion to the position of Construction Equipment Repair

Supervisor.  (Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to

Dismiss.)  The Charge did not mention Holt, Lewis, racial harassment, or any discriminatory or

retaliatory activity unrelated to promotions.  (*Id.*)

On February 28, 1997, the EEOC issued a right-to-sue notice, stating that plaintiff's

claim was dismissed because "Charging Party is a uniformed member of the National Guard."

(Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)   On May 27, 1997, plaintiff filed the

instant action, amending his complaint on July 23, 1997.

## II.  DISCUSSION

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the

pleadings and evidence indicate that "there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  The party asking for summary judgment bears the initial burden of

showing that no genuine issues exist.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th

Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party

has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and

9

show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.      Summary of Plaintiff's Claims**

As noted, plaintiff has filed claims against the Army, the State and Holt under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("section 1981"), and 42 U.S.C. § 1983 ("section 1983"). (Am. Compl.)[5] As plaintiff admits, the amended complaint "does not clearly articulate or set forth which claims are asserted against which defendants . . . ." (Pl.'s Mem. of Law. [in Opp. to Defs.'s State and Holt's Mot. to Dismiss] at 20 n. 5.) Plaintiff clarifies, however, that he is asserting the following claims:

-      Title VII claims against the State for race discrimination and retaliation, (*id.* at 1);

-      A section 1983 claim against the State seeking prospective injunctive relief, (*id.*);

-      A section 1983 claim against Holt in his personal capacity, (*id.*);

---

[5] The National Guard Bureau is also a named defendant in this action. The National Guard Bureau is not a proper defendant in a Title VII action. *Canino v. EEOC*, 707 F. 2d 468, 472 (11th Cir. 1983) (the head of the agency involved is the only appropriate defendant in a Title VII action under Section 717).

- Title VII claims against the Army (Pl.'s Mem. of Law [in Opp. to Army's Mot. for Summ. J.] at 2-3); and

- Section 1981 claims against the Army (*id.*).

Plaintiff argues that his employment with the State and the Army is more civilian than military in nature, and thus he has the right to sue under Title VII and section 1983. (Pl.'s Mem. of Law. [in Opp. to Defs.'s State and Holt's Mot. to Dismiss] at 2; Pl.'s Mem. of Law [in Opp. to Army's Mot. for Summ. J.] at 2-3.)  In the alternative, plaintiff contends that if his employment is considered military in nature, he may pursue relief against the Army under section 1981. (Pl.'s Mem. of Law [in Opp. to Army's Mot. for Summ. J.] at 2-3.)

As noted, the current claims encompass discrimination and retaliation regarding a military promotion and plaintiff's work environment. (Am. Compl.)  Before directly addressing these issues, however, the court must ascertain the preclusive effect, if any, of *Woody I* and *Woody II*.

## C.    **Effect of Prior Litigation**

### *1.    Claim Preclusion*

In his Amended Complaint, plaintiff claims that in March 1993, he filed a complaint against defendants alleging disparate treatment as to discipline, performance evaluations, and other terms and conditions of employment, and that the National Guard determined that plaintiff was treated differently. (Am. Compl. ¶¶ 17-18.)  The court finds that these allegations were clearly set forth and ruled upon in *Woody I* and are barred by the doctrine of res judicata (claim preclusion). *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355-56 (11th Cr. 2000); *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1240 (11th Cir. 1999).

11

2.    *Issue Preclusion*

In *Woody I* and *Woody II*, the courts reached the issue of whether plaintiff's position was military or civilian in nature, raising the issue of collateral estoppel.  The doctrine of collateral estoppel, or issue preclusion, bars relitigation of an issue of fact or law that has been litigated and decided in a prior suit.  *McKinnon v. Blue Cross and Blue Shield of Alabama*, 935 F.2d 1187, 1191 (11th Cir. 1991).  In order for the doctrine to apply, (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.  *Id.*

In *Woody I* and *Woody II* the plaintiff sued federal and state entities under Title VII as well as sections 1981 and 1983.  (*See Woody I* and *Woody II* Compls., attached as Exs. A and D to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)  The *Woody I* court held that as a National Guard technician, Woody was a federal civilian employee of the Army and could only bring suit against the Army under Title VII.  (*Woody I* Mem. Op. at 5-6, attached as Ex. B. to Defs.' Mem. in Supp. of Mot. to Dismiss (citing 42 U.S.C. § 2000e-16 and 10 U.S.C. § 3-13(a)(1)).)  Accordingly, the *Woody I* court dismissed all other defendants and claims, including claims brought under sections 1981 and 1983.  (*Id.*)  The court then dismissed plaintiff's Title VII claims because he failed to exhaust his administrative remedies.  (*Id.* at 7-8.)  Plaintiff appealed, but did not challenge the district court's findings that (1) Title VII provided his exclusive remedy, and (2) the Army was the only proper defendant.  (*Woody I* Unpublished Op. at 4 n.2, attached as Ex. C. to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)

In *Woody II*, the court also dismissed all claims and defendants except the Title VII claims against the Army.  (*Woody II* Order entered April 20, 1994, attached as Ex. E to the

12

Army's Evid. Sub. in Supp. of Mot. for Summ. J.)  Thereafter, the court dismissed the remaining

claims because "plaintiff either waited too long to bring suit on them . . . or has failed to exhaust

his administrative remedies . . . ."  (*Woody II* Mem. of Dec. at 2, attached as Ex. F to the Army's

Evid. Sub. in Supp. of Mot. for Summ. J.)  Plaintiff appealed the *Woody II* decision, and on May

2, 1995, the Eleventh Circuit dismissed the appeal for want of prosecution.  (*Woody II* Entry of

Dismissal, attached as Ex. G to the Army's Evid. Sub. in Supp. of Mot. for Summ. J.)

 In considering the issue of plaintiff's civilian or military status in this case, application of

the doctrine of collateral estoppel would cut both ways.  If plaintiff successfully invoked

offensive collateral estoppel, defendants would be precluded from challenging plaintiff's status

as a civilian employee with the right to bring Title VII actions against the Army.  Conversely, if

defendants successfully invoked defensive collateral estoppel, plaintiff would be precluded from

bringing section 1981 and 1983 actions against all defendants, and Title VII claims against the

State.  The court will address these issues in turn.

### a. Offensive Collateral Estoppel

 "The offensive use of collateral estoppel raises particular judicial concerns; it is governed

by slightly different principles than the historic defensive use of the issue preclusion claim."

*Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984).  The Supreme

Court has cautioned that fairness to both parties is of primary concern.  *Provau v. State Farm*

*Mut. Ins. Co.*, 772 F.2d 817, 822 (11th Cir. 1985) (citing *Parklane Hosiery Co. v. Shore*, 439

U.S. 322 (1979)).  Also of primary importance "is whether the opposing party had an adequate

incentive to litigate vigorously in the previous proceedings and whether he received a full and

fair hearing in that proceeding." *Cotton States*, 749 F. 2d at 666.  The trial court has broad

13

discretion when determining whether offensive collateral estoppel is appropriate. *Provau*, 772 F.2d at 822.

In *Woody I* and *Woody II*, the Title VII claims against the Army were ultimately dismissed because of plaintiff's failure to exhaust his remedies. In the *Woody I* appeal, plaintiff did not challenge the court's dismissals of his section 1981 and 1983 claims against all defendants and his Title VII claims against state entities. In the *Woody II* appeal, plaintiff eventually abandoned the entire appeal. Thus, defendants had little incentive to challenge the district court's findings that plaintiff was a civilian employee with recourse to sue under Title VII. To do so would cause satellite litigation in a case that had been resolved in their favor on other grounds. Consequently, the court finds that the policy of judicial efficiency underlying the doctrine of offensive collateral estoppel weighs against the application of the doctrine to this case. *See Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 n. 5 (11th Cir. 1982) ("However, the courts should avoid a rule that would force defendants to take a frivolous appeal simply to avoid the . . . preclusive effect of certain alternative grounds.")

### b.  Defensive Collateral Estoppel

Defendants argue generally that "[a]ny allegations addressed in previous lawsuits or which could have been addressed therein, are barred under res judicata and collateral estoppel." (Defs.' [State and Holt] Mem. In Supp. Of Their Mot. To Dismiss at 8.) No defendant specifically argues that due to the prior litigation, plaintiff is collaterally estopped from bringing section 1981 and 1983 actions against all defendants and Title VII actions against the State and Holt. Regardless, the court is of the opinion that the doctrine would not apply for two reasons.

First, the status of a National Guard technician as a military or civilian employee is a question of law. "[T]he Supreme Court has . . . noted that preclusion may be inappropriate,

14

particularly in constitutional adjudication, when issues of law arise in successive actions."

*Cotton States*, 749 F.2d at 666 (citing *Montana v. United States*, 440 U.S. 147, 160-63 (1979)).

Second, when applying the doctrine, fairness to both parties is of primary concern. *Provau*, 772

F.2d at 822 (citing *Parklane Hosiery*, 439 U.S. 322). In this case, it would be unfair to prohibit

plaintiff from invoking offensive collateral estoppel, yet allow defendants to invoke defensive

collateral estoppel on the same issue. Consequently, the court is of the opinion that the doctrine

of defensive collateral estoppel should not be applied to the question of plaintiff's status as

military or civilian.

**D.    Plaintiff's Title VII Claims Against the Army**

Plaintiff claims that the Army violated Title VII by denying his promotion to the military

position of Construction Equipment Repair Supervisor and instead awarding the position to a

white male. (Am. Compl. ¶ 19-20.) He also claims that he was subjected to a hostile work

environment in his technician position by his supervisor, Holt, and another foreman, Lewis. (*Id.*

at ¶¶ 24-26.) The defendant Army argues that if plaintiff is considered a civilian employee (as

opposed to a member of the military) he failed to exhaust his administrative remedies. This

court agrees.

A federal employee must pursue and exhaust her administrative remedies as a

jurisdictional prerequisite to filing a Title VII action. *See Brown v. General Servs. Admin.*, 425

U.S. 820, 832-33 (1976). "[T]he purpose of exhaustion is to give the agency the information it

needs to investigate and resolve the dispute between the employee and the employer. Good faith

effort by the employee to cooperate with the agency and EEOC and to provide all relevant,

available information is all that exhaustion requires." *Wade v. Secretary of the Army*, 796 F.2d

1369, 1377 (11th Cir. 1986); *see also Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999) ( "In

15

order to exhaust administrative remedies, the claimant is required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation.").

According to the applicable regulations, "an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a). (*See also* Pl.'s Mot. to Alter, Amend, or Vacate, Ex. 1 at 7, ¶ 3-3.) After counseling, the aggrieved person may file a formal complaint. 29 C.F.R. § 1614.105(d). (*See also* Pl.'s Mot. to Alter, Amend, or Vacate, Ex. 1 at 11, ¶ 4-2.) Only after a final decision has been reached, or after 120 days from the filing of the formal complaint, may a federal employee file a civil action in federal court. 29 C.F.R. § 1614.310. (*See also* Pl.'s Mot. to Alter, Amend, or Vacate, Ex. 1 at 34, ¶ 8-8.)[6]

In this case, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), charging discrimination based on race and retaliation because of the denied promotion. (Pl.'s 1996 EEOC Charge, attached as Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.) The Charge did not mention Holt, Lewis, racial harassment, or any discriminatory or retaliatory activity unrelated to the promotion. (*Id.*) On February 28, 1997, the EEOC issued a right-to-sue notice, stating that plaintiff's claim was dismissed because "Charging Party is a

---

[6] The regulations submitted by plaintiff indicate that if the agency takes no action, the aggrieved employee may file a civil action within 180 days. The discrepancy (between 120 days and 180 days) does not affect this case.

16

uniformed member of the National Guard." (Ex. 4 to Pl.'s Evid. Sub. in Resp. to Mot. to Dismiss.)[7]

Filing a Charge of Discrimination with the EEOC does not satisfy the administrative requirements set forth in the regulations governing federal civilian employees. *See* 29 C.F.R. pt. 1614. Further, even if the EEOC Charge did satisfy the requirement, plaintiff did not include any allegations of harassment. Consequently, the court finds that even if plaintiff is considered a federal civilian employee, he has failed to exhaust the administrative remedies that are prerequisites to bringing a Title VII claim. Therefore, the court finds that plaintiff's Title VII claims against the Army are due to be dismissed because of plaintiff's failure to exhaust his administrative remedies.

Plaintiff asserts that he exhausted all the remedies available to him through the National Guard in pursuit of his discrimination claim. (Pl.'s Mem. of Law [in Resp. to State and Holt's Mot. Dismiss] at 13-16.) Plaintiff states that he filed an EEO complaint with the National Guard Bureau in 1994 and has yet to receive a response. (*Id.*) Thus, he claims that the only available avenue for redress is the one he is currently taking, filing an EEOC claim on October 23, 1996, receiving his right-to-sue notice, and filing this complaint in federal court. (*Id.*; Pl.'s Am. Compl. ¶¶ 9-11.) Plaintiff claims that any and all other remedies would be futile or inadequate. (Pl.'s Mem. in Resp. to Defs.' Mot. to Dismiss at 13-16.)

--------

[7] In his evidentiary submission, plaintiff also submits a formal complaint of discrimination filed with the National Guard Bureau on November 16, 1994. (Ex. 1, Pl.'s Evid. Sub. in Response to Def.'s Mot. to Dismiss.) In this 1994 complaint, Woody alleges discrimination as to promotion and performance evaluations. (*Id.*) The court finds these allegations are either outside the scope of the Amended Complaint, or, in the alternative, barred by the applicable statute of limitations.

Plaintiff's claims of futility are unpersuasive. The Army has investigated and taken corrective action when plaintiff previously made claims of discrimination. (*Woody I* Mem. Op.) Additionally, plaintiff's claim that the 1994 EEO complaint filed with the National Guard Bureau is evidence of futility or administrative exhaustion is unpersuasive. Plaintiff could have brought charges based on the 1994 promotion and performance evaluations, but did not mention them in his Amended Complaint filed July 23, 1997. Thus, those challenged activities are outside the scope of this claim.

In the alternative, as explained below in the discussion of plaintiff's section 1981 claim, the court is of the opinion that both plaintiff's position and the challenged conduct are military in nature. Consequently, the Title VII claims are also due to be dismissed under the military exception to Title VII. *See Doe v. Garrett*, 903 F.2d 1455, 1458 (noting the "well-established case law excluding uniformed military personnel from protection under Title VII"); *Stinson v. Hornsby*, 821 F. 2d 1537, 1540 (holding that where a member of the National Guard is more military than civilian, "no Title VII action may be brought").

**E.    Plaintiff's Title VII Claims Against the State**

Plaintiff's Title VII claims against the State are due to be dismissed for the same reasons. First, plaintiff has failed to exhaust his administrative remedies. Second, as explained below, the court is of the opinion that plaintiff's position and the challenged activity are more military than civilian in nature, and thus Title VII is not available as a remedy.

**F.    Plaintiff's Section 1981 Claim Against the Army**

As noted, plaintiff contends that even if his federal employment is military in nature, he may file suit against the Army under section 1981. Because the court believes that plaintiff's employment is military in nature, the court will address this alternative claim.

18

1.    *Exhaustion of Remedies*

If plaintiff's employment is considered military in nature, plaintiff must nonetheless

exhaust administrative remedies before seeking review in federal court. *See Hoffburg v.*

*Alexander*, 615 F. 2d 633, 637 (5th Cir. 1980) ("this court has consistently held that a plaintiff

challenging an administrative military discharge will find the doors of the federal courthouse

closed pending exhaustion of available administrative remedies"); *see also Linfors v. United*

*States*, 673 F.2d 332, 334 (11th Cir. 1982) (dismissing Coast Guard's commander's claim

regarding his service record because he failed to exhaust his administrative remedies by filing a

complaint with the Board for Correction of Military Records).  Further, regulations issued by the

National Guard state that any current or former member of the National Guard "who believes

that he or she was illegally discriminated against due to . . . race" should file a formal complaint

within 180 days of the date of the alleged discrimination. (Pl.'s Mot. to Alter, Amend or Vacate,

Ex. 2 at 7 ¶ 2-2.)  The National Guard member has the option to file his complaint with any one

of numerous National Guard personnel.  (*Id.* at 8 ¶¶ 2-2(c), 2-4.)

The Acting Director of the Army Board for Correction of Military Records has submitted

a declaration stating that plaintiff has not filed an application for relief with respect to the

allegations in this lawsuit. (Decl. Karl Schneider ¶ 4.)  Further, other than the 1996 EEOC

Charge, plaintiff has not alleged that he filed any administrative complaint of discrimination

regarding the allegations contained in this lawsuit.[8]  The EEOC is not among the entities listed in

the National Guard regulations governing the filing of discrimination complaints by National

Guard members. (Pl.'s Mot. to Alter, Amend or Vacate, Ex. 2 at 8 ¶¶ 2-2(c), 2-4.)  The court has

---

[8]  As noted, the EEOC Charge contained no allegations of racial harassment.

previously rejected plaintiff's claims of futility. Consequently, the court finds that even if plaintiff is considered a member of the military, he has failed to exhaust his administrative remedies. Thus, plaintiff's section 1981 claim against the Army is due to be dismissed.

### 2. *Justiciability and Reviewability*

In the alternative, defendants argue that even if plaintiff exhausted, or was not required to exhaust, his administrative remedies, his claims involve nonjusticiable military matters. In addressing this argument, defendants and plaintiff use both the two-step evaluation developed by the Fifth Circuit in *Mindes v. Seamon*, 453 F. 2d 197, 201 (5th Cir. 1971), and the "incident to military service" standard initially set forth in *Feres v. United States*, 340 U.S. 135 (1950), and further developed in *Chappell v. Wallace*, 462 U.S. 296 (1983), and *United States v. Stanley*, 483 U.S. 669 (1987). (Defs.' Mem. in Supp. of Mot. to Dismiss at 4-5; Army's Mem. in Supp. of Mot. for Summ. J. at 10-15; Pl.'s Mem. Law in Resp. to Mot. to Dismiss at 6-9, 17-19.)

### a. Development of the Feres/Chappell/Stanley Standard

In *Feres*, the Supreme Court held that the government was not liable under the Federal Tort Claims Act for injuries to servicemen "where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146.

Thereafter, in *Chappell*, the Supreme Court addressed a *Bivens*-type action by five Navy enlisted men seeking damage and injunctive relief for alleged race discrimination in violation of their constitutional rights. *Chappell*, 462 U.S. at 297. Relying partially on *Feres*, the Court held that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305.

In *Stanley*, the Supreme Court handed down a decision in yet another *Bivens*-type action by a member of the military. *Stanley*, 483 U.S. 669. The Court held that *Chappell* did not rule

20

out all actions by enlisted men against the government; rather, the proper test for *Bivens*-type actions was whether the injuries "arise out of or are in the course of activity incident to service." *Id.* at 684 (quoting *Feres*, 340 U.S. at 146).

### b.  The Mindes Two-Step

After the Supreme Court set forth its "incident to service" standard in *Feres*, but before the standard was further clarified in *Chappell* and *Stanley,* the former Fifth Circuit considered an action brought by an Air Force Captain seeking declaratory and injunctive relief from an adverse personnel report. *Mindes*, 453 F. 2d at 198. Instead of using the *Feres* standard, the *Mindes* court established a two-step evaluation to determine if a court should review internal military affairs. *Id.* at 201-02.[9] Thereafter, the Eleventh Circuit followed *Mindes* as binding precedent. *Rucker v. Secretary of the Army*, 702 F. 2d 966, 968 (11th Cir. 1993) (citing *Bonner v. City of Pritchard*, 661 F. 2d 1206 (11th Cir. 1981)).

After *Chappell*, and one month after *Stanley*, the Eleventh Circuit considered an action by a discharged member of the Alabama National Guard alleging discrimination based on his race in violation of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. *Stinson v. Hornsby*, 821 F. 2d 1537, 1539 (11th Cir. 1987). The *Stinson* court recognized that Title VII actions were

---

[9] "The first step requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary to the Constitution, applicable statutes, or its own regulations and whether the plaintiff has exhausted his administrative remedies. Once that determination is made, the court must then balance the substance of the allegations against the policy reasons that militate against review based on four factors:

    1.    the nature and strength of the plaintiff's challenge to the military function; and
    2.    The potential injury to the plaintiff if review were denied;
    3.    the type and degree of anticipated interference with the military function; and
    4.    the extent to which the exercise of military expertise or discretion is involved."
*Rucker v. Secretary of the Army,*702 F.2d 966, 969-70 (11th Cir. 1983) (citing *Mindes*, 453 F. 2d at 201-02).

foreclosed to members of the military and the National Guard, at least when their positions were primarily military in nature. *Id.* at 1539-40.

The *Stinson* court further held, however, that *Chappell* did not foreclose all causes of action, and that "uniformed members of the armed forces may assert that their constitutional and statutory rights have been violated . . . ." *Id.* at 140 (quoting *Gonzales v. Dept. of the Army*, 718 F. 2d 926, 929 (9th Cir. 1983). Thus, as to Stinson's claims under sections 1981 and 1983, the Eleventh Circuit remanded the case for further analysis under the *Mindes* two-step evaluation. *Id.* at 1540-41. The court specifically stated: "We find the approach adopted in *Mindes* binding in this action." *Id.* at 1540. The Eleventh Circuit did not mention the *Stanley* decision in its opinion.

Thereafter, the Eleventh Circuit considered the claim of an HIV positive member of the Naval Reserve against the Navy and the Naval Reserve alleging violations of the Rehabilitation Act and the Due Process Clause. *Doe v. Garrett*, 903 F. 2d 1455 (11th Cir. 1990). The Eleventh Circuit recognized the "well-established case law excluding military personnel from protection under Title VII of the Civil Rights Act," *id.* at 1458, and applied that rationale in affirming the district court's dismissal of plaintiff's Rehabilitation Act claims. *Id.* at 1458-62. The court also affirmed the dismissal of the plaintiff's due process claim on the grounds that plaintiff had no protected property or liberty interest. *Id.* at 1462-63.

In the alternative, the court examined the district court's finding that the due process claim was not reviewable under *Mindes. Id.* The court found that there was "nothing objectionable in the district court's application of *Mindes*, and we think it clear that under *Mindes* factors one and three, at least, review of Doe's due process claim in this case is

22

disfavored." *Id.* at 1463. In a footnote, however, the Eleventh Circuit expanded its view of the

*Mindes* test:

> This Court in *Stinson* took the rather severe approach of reversing
> and remanding the district court's dismissal on the merits of a
> constitutional claim because the district court had not applied
> *Mindes* to determine whether the claim was reviewable in the first
> place. We reversed despite the fact that the issue on the merits was
> quite simple, the district court's disposition appeared plainly
> correct, and the district court's consideration of *Mindes* on remand
> could not possibly have led to a different result. *See Stinson*, 821
> F.2d at 1541-43 (Henderson, J., specially concurring) (criticizing
> *Mindes* and suggesting disposition of plainly meritless
> constitutional claims "without resort to the cumbersome *Mindes*
> analysis"); *accord Watson v. Arkansas National Guard*, 886 F.2d
> 1004, 1009-10 (8th Cir.1989).
>
> We note that despite the apparent assumption of *Stinson*, this Court
> and its predecessor have not always applied *Mindes* in
> constitutional challenges to military personnel decisions. The
> former Fifth Circuit, for example, failed to apply *Mindes* in *Sims v.
> Fox*, [505 F.2d 857 (5th Cir. 1974) (en banc)], decided only three
> years after *Mindes*. Furthermore, while *Mindes* refers to statutory
> as well as constitutional claims, it appears well established that
> *Mindes* need not be applied before reaching the merits of a
> statutory claim against the military. *See Stinson*, 821 F.2d at 1539-
> 40; *Smith*, 763 F.2d at 1324-25 (both rejecting statutory claims
> without resort to *Mindes* analysis) . . . .

*Id.* at 1446 n.15.

This was the last mention of *Mindes* by the Eleventh Circuit. Since *Doe v. Garrett*, the

Eleventh Circuit has not addressed a discrimination claim involving a member of the armed

services. In addressing all other federal statutory and constitutional claims involving members

of the armed services, the Eleventh Circuit has consistently relied on the "incident to service"

standard set forth in *Feres*, *Chappell*, and *Stanley*. *See, e.g., Whitley v. United States*, 170 F.3d

1061, 1068 (11th Cir. 1999); *Jimenez v. United States*,158 F.3d 1228, 1229 (11th Cir. 1998);

*Kitowski v. United States*, 931 F. 2d 1526, 1529 (11th Cir. 1991).

23

### c.   Feres/Chappel/Stanley or Mindes?

Since *Stanley*, other Circuits addressing discrimination, civil rights claims and other constitutional claims by members of the military, including the National Guard, have held that the *Feres/Chappell/Stanley* standard is the proper rule in determining the justiciability of such claims in the military context, abrogating the *Mindes* approach. *Wright*, 5 F. 3d at 590, n.6; *Maddick v. United States*, 978 F. 2d 614, 615 (10th Cir. 1992); *Watson v. Arkansas National Guard*, 886 F. 2d 1004, 1006-07, 1009-10 (8th Cir. 1989). Moreover, the architect of the *Mindes* two-step test, the Fifth Circuit, has abandoned that approach as well. *Crawford v. Texas Army Nat'l Guard*, 794 F. 2d 1034, 1036 (5th Cir. 1986); *see also Wright*, 5 F.3d at 590 n.6 ("*Mindes* has been banished from its homeland").

In light of these post-*Stinson* developments, and in consideration of the Eleventh Circuit's stated reservations regarding the viability of *Mindes*, the court is of the opinion that the "incident to service" standard is the correct rule to apply when determining whether an activity in the uniformed services is military in nature, rendering it nonjusticiable. *See Neal v. Alabama Nat'l Guard*, 1997 WL 114910, *2 - *4 (M.D. Ala. March 13, 1997) (reaching the same conclusion).

### d.   Application of the Feres/Chappell/Stanley Standard

In *Kitowski*, the Eleventh Circuit set forth three factors to examine when determining if a plaintiff's injuries "arise out of or are in the course of activity incident to military service" as set forth in *Feres*, *Chappell*, and *Stanley*: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the serviceman was engaged in at the time of the injury. *Kitowski*, 931 F.2d at 1528-29. Thus, the court must apply these factors to the challenged *conduct* to determine the justiciability of the claims.

24

### *i.*     *The 1996 promotion claims*

In February of 1996, plaintiff learned that a Construction Equipment Repair Supervisor position, a military position, was vacant. (Morrow Decl. ¶ 8.)  The position of Construction Equipment Repair Supervisor is considered a 62B40 specialty level military position, which has a skill level of 40.  (*Id* at ¶¶ 8-9.)  On February 11, 1996, plaintiff, who at that time had a skill level of 30, applied for and was denied the position.  (Am. Compl. ¶ 19.)  Plaintiff eventually received the military position of Self Propelled Field Artillery System Mechanic.  (*Id.*)  Plaintiff claims that on October 22, 1996, he reapplied for the position of Construction Equipment Repair Supervisor.  (Am. Compl. ¶ 19.)  Plaintiff claims that his application was rejected and the position was awarded to a white male.  (*Id.* at ¶ 20.)

Turning to the three factors set forth in *Kitowski*, it is clear from this record that any injury arising out of the denial of the Construction Equipment Repair Supervisor position occurred (1) when all the involved parties were on military duty, (2) at military facilities, (3) while making personnel decisions regarding military promotions.  The activity is clearly incident to military service, and thus nonjusticiable and not reviewable by this court.  *Wright*, 5 F. 3d at 591 (holding that employment action taken against National Guard technician was an injury suffered in his military capacity, arising incident to his military service, and thus "fail[ing] the test of justiciability").  Therefore, summary judgment is due to be granted to the Army on plaintiff's section 1981 claim relating to the denial of the Construction Equipment Repair Supervisor position.

### *ii.*     *Harassment claim*

Plaintiff contends that his supervisor, Holt, has (1) made numerous racial remarks directed toward plaintiff; (2) encouraged co-workers to write letters to get plaintiff dismissed;

and (3) failed to protect plaintiff from physical harm. (Am. Compl. at ¶ 24.) Plaintiff further claims that another foreman, Lewis, used the term "nigger" in plaintiff's presence. (*Id.* at ¶ 25.) Finally, plaintiff alleges that he is more severely disciplined than similarly situated white employees. (*Id.* at ¶ 26.)

The Ninth Circuit, addressing a state tort claim based on the harassment of a technician in a maintenance shop, undertook a detailed analysis of the National Guard's civilian technician position. *Stauber v. Cline*, 837 F. 2d 395, 400 (9th Cir. 1987). In *Stauber*, the technicians were under the direct command of active-duty military officers, shared the same direct military relationships whether on military or civilian status, and were subject to military discipline. *Id.* Consequently, the court concluded that "[n]otwithstanding [a technician's] dual employment status, we agree that [plaintiff's claim of harassment] arose incident to service." *Id.* at 401.

In *NeSmith v. Fulton*, 615 F. 2d 196 (5th Cir. 1980), the former Fifth Circuit also concluded that a National Guard technician's employment activities necessarily implicate military considerations. The court stated, in relevant part:

> Formally, a civilian technician is a federal civil employee outside the competitive civil service. In substance, however, the position is one in a military organization. The technician is "an employee of the Department of the Army or the Department of the Air Force, as the case may be . . . ." 39 U.S.C. § 709(d), engaged in such military enterprises as "(1) the administration and training of the National Guard; and (2) the maintenance and repair of supplies issued to the National Guard or the armed services." 32 U.S.C. § 709(a)(1) and (2). Moreover, one of the express purposes of the National Guard Technicians Act was to "recognize the *military characteristics* of the National Guard" by requiring civilian technicians to be military members of the National Guard and by providing for their supervision by the adjutants general pursuant to regulations prescribed by the secretary of the relevant military department. H.R. Rep. No. 1823, 90th Cong., 2nd Sess. (1968), 1968 U.S. Cong. & Admin. News, p. 3319.

26

> NeSmith's challenge to the decision to terminate him as a civilian
> technician thus involves an internal military matter and implicates
> judicial concern over inappropriate intrusion into such
> transactions.

*NeSmith*, 615 F. 2d at 201 (emphasis in original).[10]

In this case, plaintiff holds the same technician position as the *Stauber* and *NeSmith*

plaintiffs. In this position, plaintiff was subject to the same type of military control, command,

and discipline as the *Stauber* and *NeSmith* plaintiffs. (Morrow Decl. ¶ 2 and n. 3.) Further, the

maintenance shop was a military facility, and while performing technician duties, plaintiff, his

peers, and supervisors were in military uniform. 32 U.S.C. § 709(b) (requiring technicians to

"wear the uniform appropriate for the member's grade and component of the armed forces while

performing duties as a technician"). Thus, the court is of the opinion that plaintiff's position is

military in nature and the challenged activity is clearly incident to plaintiff's military service.

Consequently, plaintiff's section 1981 claim against the Army is nonjusticiable and not

reviewable by this court.[11]

---

[10] Most courts that have addressed the issue echo *NeSmith*'s holding that despite the civilian aspect of the position, National Guard technicians are military in nature. *See Wright v. Park*, 5 F. 3d 586, 588 (1st Cir. 1993) ("it is unsurprising that, no matter the context, every court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature") (collecting cases, including *NeSmith*); *but see Mier v. Owens*, 57 F. 3d 747, 749 (9th Cir. 1995) ("Because Guard technicians are in a hybrid job entailing both civilian and military aspects, we conclude that Title VII coverage of civilians employed by the military encompasses actions brought by guard technicians except when the challenged conduct is integrally related to the military's unique structure.")

[11] In disputing the military nature of his position, plaintiff has submitted National Guard regulations that allow National Guard technicians to file discrimination complaints using the procedure assigned to civilian employees. (Pl.'s Mot. to Alter, Amend or Vacate, Ex. 1 at 1.) Plaintiff contends that such regulations show that his position is civilian in nature. The court rejects this argument for two reasons. First, as the court has already found, plaintiff failed to utilize these procedures. Second, as noted, courts are split as to whether National Guard technicians are civilian or military in nature. *See* note 10, *supra*. Since some courts still attempt

27

### e.    Application of the Mindes Two-Step

The court notes that even if the *Mindes* two-step applied, plaintiff's section 1981 claim would be nonjusticiable. The threshold requirement of the test "requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary to the Constitution, applicable statutes, or its own regulations *and whether the plaintiff has exhausted his administrative remedies*." *Rucker*, 702 F.2d at 969 (citing *Mindes*, 453 F. 2d at 201-02) (emphasis added). As noted, plaintiff has failed to exhaust such remedies.

Further, factors one, three, and four of the second step of the *Mindes* test militate against review. Plaintiff's claims are tenuous (factor one),[12] the military nature of plaintiff's position means that review of such claims would interfere with military function (factor three), and the challenged employment decisions (promotion and discipline of members of the military) involve the exercise of military expertise and discretion (factor four).

Because of the foregoing reasons, the court finds that plaintiff's section 1981 claim is due to be dismissed.

### G.    Plaintiff's Section 1983 claims against the State and Holt

As noted, plaintiff brings claims against the State and Holt under section 1983. These claims are subject to the same analysis as plaintiff's section 1981 claim against the Army. *See Stinson*, 821 F. 2d at 1540-41. Based upon the preceding analysis, the court finds that the claims are due to be dismissed on the alternative grounds that (1) plaintiff failed to exhaust his

_____

to sever the civilian aspect of the technician position, *see, e.g., Mier*, 57 F. 3d 747, the Army cannot simply do away with procedures for processing complaints by technicians located in such jurisdictions.

[12] "An obviously tenuous claim of any sort must be weighted in favor of declining review." *Mindes*, 453 F. 2d at 201.

28

administrative remedies,[13] (2) under *Feres/Chappell/Stanley*, the challenged activity was "incident to service;" and (3) under *Mindes*'s second step, factors one, three, and four militate against review of plaintiff's claims.

### III. CONCLUSION

Based upon the foregoing reasons, the court finds that both the Motion for Summary Judgment and the Motion to Dismiss are due to be granted. An Order consistent with this opinion will be entered contemporaneously with this opinion.

**DONE** this 29th day of September, 2000.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[13] *Patsy v. Board of Regents*, 457 U.S. 496 (1982), held that exhaustion is not mandatory in section 1983 cases. The effect of *Patsy* on the requirement of exhaustion on section 1983 claims brought by members of the military is an open question.

29